IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:06-CV-388-D

| | |
|---|---|
| MILDRED S. WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

In this action, plaintiff Mildred S. Williams ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that plaintiff is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (DE #10, 12). The motions were referred to the undersigned Magistrate Judge for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DE #16). For the reasons set forth below, it is recommended that defendant's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 15 November 2001, alleging a disability onset date of 28 February 2001 due to twelve alleged impairments: arthritis, anxiety, edema (*i.e.*, swelling) of the hands and feet, numbness of the hand and legs, poor memory, hearing loss, poor circulation, bilateral carpal tunnel syndrome, vertigo (*i.e.*, dizziness), acid reflux, high cholesterol, and depression. Transcript of Proceedings ("Tr.") 133, 150, 162. The application was denied initially,

*id.* 93, and again upon reconsideration, *id.* 101, and a request for hearing was timely filed, *id.* 104. On 1 October 2003, a hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 22-36. The ALJ issued a decision denying plaintiff's claim on 30 January 2004 ("first decision"). *Id.* 83-89. The Appeals Council vacated that decision and remanded the case. *Id.* 91-92. The principal grounds for the vacatur were that the ALJ had not adequately supported her credibility and residual functional capacity ("RFC") determinations. *Id.*

A second hearing was held on 29 June 2005. *Id.* 37-73. The ALJ issued a second written decision dated 21 November 2005 ("decision" or "instant decision"), *id.* 12-20, based on the evidence presented at both hearings, *id.* 14. The decision incorporated by reference the evaluation of the evidence in the first decision. *Id.* The ALJ found that plaintiff was not disabled and therefore not entitled to DIB. *Id.* 12, 20 ¶ 13. Plaintiff timely requested review by the Appeals Council, *id.* 8, and submitted four additional exhibits, *id.* 7. The Appeals Council considered the additional evidence and denied the request for review on 3 August 2006.[1] *Id.* 4-7. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.1581. Plaintiff commenced this proceeding for judicial review on 28 September 2006, pursuant to 42 U.S.C. § 405(g).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[1] The Notice of Appeals Council Action denying plaintiff's request for review is stamp dated "AUG - 8 2006" but the day reference is overwritten in hand as "3." Tr. 4.

2

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe disability more specifically in terms of impairments:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. Part 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

3

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was fifty-seven years old on the alleged onset date of disability and was fifty-nine and sixty-one years old, respectively, on the dates of the two administrative hearings. Tr. 22, 37, 133. Plaintiff had purported past relevant work experience as a salary or accounting clerk. *Id.* 12.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 13, 19 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe withing the meaning of the Regulations, 20 C.F.R. § 404.1520(c): degenerative joint disease, carpal tunnel syndrome, hearing loss, obesity, tobacco abuse, a history of dizziness, a history of heel spur, anxiety, and depression. Tr. 13, 19 ¶ 3. At step three, however,

4

the ALJ found that plaintiff's impairments did not meet or medically equal one of the listed impairments in appendix 1 to 20 C.F.R. part 404, subpart P. Tr. 14, 19 ¶ 4.

At step four, the ALJ determined that plaintiff had the RFC mentally for simple routine repetitive tasks and exertionally for medium work with frequent but non-continuous handling and fingering, and frequent climbing of stairs, subject to avoidance of working at unprotected heights or around dangerous machinery. *Id.* 17, 19-20 ¶ 6. Based on this RFC, the ALJ found that plaintiff could not perform any of her past relevant work and that she has no transferable skills from any past relevant work. *Id.* 18, 20 ¶¶ 7, 10. At step five, based on the testimony of a vocational expert, the ALJ found that although plaintiff could not return to her past relevant work, there were jobs in the national economy existing in significant numbers that plaintiff could perform such as a food service worker, counter worker, and checker. *Id.* 19, 20 ¶ 12.

## II. DISCUSSION

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ failed to: (1) find two of plaintiff's impairments to be severe; (2) properly assess plaintiff's RFC; and (3) properly assess plaintiff's credibility. Each of these contentions is examined below following a discussion of the applicable standard of review.

### A.   Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong

legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B. Severity Determination

Plaintiff argues that the ALJ failed to find plaintiff's claimed impairments of arthritis and bilateral lower extremity edema to be severe at step two of the sequential analysis and that such failure was legal error. The court disagrees.

It is apparent from the ALJ's decision that she at times refers to plaintiff's arthritis as "degenerative joint disease." *E.g.*, tr.13, 16, 17, 19 no. 3. This term is a recognized synonym for osteoarthritis,[2] the specific type of arthritis diagnosed by plaintiff to have, *id.* 370-71. Indeed, plaintiff's medical records refer to her arthritis condition variously as arthritis, osteoarthritis, and degenerative joint disease or DJD. *E.g.*, *id.* 259, 352, 362, 417, 418. The ALJ expressly found plaintiff's degenerative joint disease to be a severe impairment. *Id.* 13, 19 no. 3. Plaintiff's contention that the ALJ did not find her arthritis to be severe is therefore meritless.

As to lower extremity edema, plaintiff is correct that the ALJ did not make a severity finding expressly addressing it. However, the court does not believe a separate finding was essential. One reason is that the ALJ clearly did consider plaintiff's edema. She questioned plaintiff about it at the hearing. *Id.* 54-55. She also discussed it throughout her decision and did so in combination with plaintiff's other claimed impairments. *Id.* 14, 15, 16. The ALJ ultimately found unsupported plaintiff's allegation that the edema was a serious condition. *Id.* 15, 16. Substantial evidence supports this finding. *E.g.*, *id.* 254 ("no edema at this time"), 265 ("mild puffiness around the ankles"), 410 ("trace" ankle and foot edema), 419 ("minimal" edema).

---

[2]*See* Merriam-Webster Medical Dictionary, *available at* http://medical.merriam-webster.com/medical/osteoarthritis.

Moreover, the record supports an inference that the ALJ viewed plaintiff's edema as a part of her degenerative joint disease, about which the ALJ did make an express severity finding. Various medical records appeared to have taken this approach by, for example, not identifying edema as a distinct diagnosis when degenerative joint disease is so identified. *E.g.*, tr. 373, 419. Moreover, the record does not document a contrary origin for the edema.[3] Although connective tissue disease was considered a possible cause at one point, all laboratory tests for it were negative. *Id.* 252. Also lacking support are conclusory statements in letters by a physician assistant[4] attributing plaintiff's edema to fasciitis (at least as of 1999), *id.* 371, 372, and peripheral vascular disease, *id.* 370. The court therefore finds no error in the ALJ's severity determination.

## C.     RFC Analysis

Plaintiff contends that there is not substantial evidence in the record to support the ALJ's determination that plaintiff can do work at the medium exertional level.[5] The Regulations define medium work as work that involves lifting no more than 50 pounds at a time and frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). The principal basis for plaintiff's contention is that plaintiff's degenerative joint disease prevents her from doing such work. The court rejects plaintiff's contention.

---

[3] *See* Merriam-Webster Medical Dictionary, *available at* http://medical.merriam-webster.com/medical/osteoarthritis.

[4] Gerald E. Brenneman, P.A.C., whose opinions on other matters are discussed further below.

[5] The determination that plaintiff can perform medium work is of particular importance in this case. Given her advanced age (*i.e.*, 55 years or older) and the lack of transferable skills from her past relevant work, a finding that plaintiff could only perform below the medium exertional level (*e.g.*, light or sedentary work) would require the determination that she is disabled. *See* 20 C.F.R. § 404.1568(d)(4).

8

## 1. Absence of Evidence Substantiating Disabling Functional Limitations or Pain

As the ALJ discussed at length, the progress notes and related objective data in the record (excluding the four documents discussed in sections 3 and 4 below) do not contain evidence of functional limitations or levels of pain that would preclude plaintiff from performing medium work. Tr. 14-16, 85-87. Such records include those of the two principal medical groups that have treated plaintiff. One group is Harnett Family Medicine, which includes physician Richard Juberg, M.D. and certified physician assistant Gerald E. Brenneman, P.A.C. ("P.A. Brenneman"), and it treated plaintiff from March 1993 to August 2003. Tr. 238-317, 370-72. The other group is Dunn Erwin Medical Center, which includes physician Lakshman Rao, M.D. and family nurse practitioner Cynthia Lee, F.P.N. ("N.P. Lee"), and it treated plaintiff from April 2002 to June 2005. *Id.* 352-69, 373, 404-13, 418-23.

For example, plaintiff's examination at Harnett Family Medicine on 25 January 2001 for hip pain showed her to have normal sensation, strength, and range of motion, and x-rays were unremarkable. *Id.* 85, 260. The note on the visit does not delineate any limitations on plaintiff's activities, but states simply that she feels stiff when she gets up in the morning with the symptoms improving as she gets moving. *Id.* 260. In October 2002, Dr. Rao at Dunn Erwin Medical Center found plaintiff to have degenerative joint disease, but no edema or muscle tenderness. *Id.* 85, 362. There is no notation of any disabling functional limitations or pain. In February 2004, Dr. Rao found plaintiff to have a full range of motion in her upper and lower extremities with only trace ankle/pedal edema. *Id.* 15, 410. Again, there is no mention of functional limitations or disabling pain. At an examination by P.A. Lee at Dunn Erwin Medical Center in October 2004, plaintiff complained of increased arthritis pain and her medication for pain was increased. *Id.* 15, 405. At her next office

9

visit, some six months later in April 2005, another adjustment was made by P.A. Lee in plaintiff's medication in response to her being awakened by leg pain at night. *Id.* 419. The records for neither of these two visits discuss any functional limitations on plaintiff or disabling pain.

### 2. Physical RFC Assessment by Consulting Physician

In addition to the absence of evidence in the medical records substantiating plaintiff's claims of disabling degenerative joint disease, the ALJ's finding that plaintiff can do medium work is supported by the physical RFC assessment of Elizabeth Hoyt, M.D. on 28 January 2002. *Id.* 212-19. Based on her review of plaintiff's medical records, Dr. Hoyt found that plaintiff had the capacity to lift or carry 50 pounds occasionally and 25 pounds frequently--the exertional requirements for medium work. *Id.* 213. The opinion of such a non-examining medical source is generally given less weight than that of an examining source. *See Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005); 20 C.F.R. § 404.1527(d)(1), (f). Nevertheless, such opinions may be given substantial weight based on such factors as the thoroughness of the review upon which the opinion is based and the consistency of the opinion with the record as a whole. *See Johnson*, 434 F.3d at 657; 20 C.F.R. § 404.1527(f).

Here, the court finds that the ALJ was entitled to accord the opinions of Dr. Hoyt substantial weight. Her opinion was based a review of a significant portion of plaintiff's medical records. Tr. 219. In addition, Dr. Hoyt's opinion is consistent with the other medical evidence of record, as discussed above and further below.

### 3. Non-Physician Opinions on Disability

Plaintiff contends that the ALJ erred by not giving substantial weight to opinions by N.P. Lee and P.A. Brenneman to the effect that plaintiff is disabled. The court does not agree.

10

In a five-sentence letter, dated 1 October 2003, N.P. Lee acknowledges that plaintiff is applying for disability and states that she is writing on plaintiff's behalf. *Id.* 373. She refers to the period over which she has been treating plaintiff, lists plaintiff's ailments, and then states: "She has been treated for these diseases for many years, and ongoing treatment will be needed; therefore, gainful employment may be difficult for her in light of all these problems." *Id.*

There are two letters by P.A. Brenneman at issue. The first, which is dated 28 April 2002, is to plaintiff's attorney and is an eight-paragraph summary plaintiff's ailments.[6] *Id.* 371-72. In it, P.A. Brenneman offers the opinion that plaintiff's arthritis "has been instrumental in limiting her ability to lift, carry and manipulate objects" and "[t]his has made it difficult to maintain gainful employment." *Id.* 371. He also states that "the combination of [plaintiff's] ailments have made it impossible for her to conduct gainful employment." *Id.* 372.

The second letter, dated 27 August 2003, over a year after the first letter, appears to be an abbreviated version of the first. *Id.* 370. This letter repeats only the opinions regarding the effects of plaintiff's arthritis and not the opinion regarding the effect of her ailments in combination. *Id.*

While the ALJ did not expressly address the opinions of N.P. Lee and P.A. Brenneman in the instant decision, she did address them in a portion of her first decision incorporated by reference into the instant decision. *Id.* 14, 86. She did not accept the opinions of N.P. Lee and P.A. Brenneman on the grounds that they are not physicians and that their opinions are not supported by the treatment records or objective findings. *Id.* 86.

---

[6] A progress note indicates that several days before the date of the letter plaintiff informed Harnett Family Medicine that she was "trying to get disability--needs cover letter stating that her condition is disabling." Tr. 238.

11

The ALJ is correct that the opinions of non-physicians such as N.P. Lee and P.A. Brenneman are generally accorded less weight than those of physicians. Such non-physicians are not viewed as "acceptable medical source[s]" under the Regulations. 20 C.F.R. § 404.1513(d). Instead, they constitute "other sources" of evidence that may be used to evaluate a claimant's ability to work, and opinions from them are not deemed medical evidence. *Id.*; *see also Craig*, 76 F.3d at 590.

There is also substantial evidence to support the ALJ's determination that the objective findings and treatment records, including N.P. Lee's and P.A. Brenneman's own progress notes, do not support the opinions to the effect that plaintiff is unable to work. The evidence regarding plaintiff's degenerative joint disease is reviewed above. The ALJ properly evaluates the evidence regarding plaintiff's other impairments. For example, she finds that the medical evidence as a whole shows that plaintiff's depression and anxiety are adequately controlled by medication and have not required further professional intervention. Tr. 17. She also notes that plaintiff has not shown persistent complaints of dizziness. *Id.* 16. The ALJ provides a similar evaluation of the evidence regarding plaintiff's claimed carpal tunnel syndrome, including the fact that she has not pursued surgery for her symptoms. *Id.*

Notwithstanding these well-supported findings, the ALJ did address plaintiff's impairments in her RFC determination. For example, plaintiff was restricted from continuous handling and fingering due to plaintiff's signs of carpal tunnel syndrome. *Id.* 17. The ALJ also restricted plaintiff from working at unprotected heights or around dangerous machinery because of her past history of

12

dizziness. *Id.* She also limited plaintiff to simple routine repetitive tasks in recognition of her mental capacity.[7] *Id.*

Moreover, in her letter, N.P. Lee states simply that "gainful employment *may* be *difficult*" for plaintiff. *Id.* 373 (emphasis added). Therefore, N.P. Lee's letter on its face is equivocal about whether plaintiff can or cannot work. Similarly, P.A. Brenneman speaks in both his letters only of the "difficulty" of plaintiff maintaining gainful employment. *Id.* 370, 371. His opinion that employment was impossible for plaintiff appears only in his 2002 letter and not in the letter the following year. *Id.* 372.

Furthermore, these opinions are for the most part opinions on the ultimate issue of disability, an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1), (3); Soc. Sec. R. 96-5p. No special significance is to be attributed to the sources of such an opinion. *Id.* Although the P.A. Brenneman letters also state that plaintiff's arthritis has limited her ability to lift and carry objects, *id.* 370, 371, no meaningful specification of the degree or nature of this limitation is provided.

Plaintiff complains that the ALJ did not apply Soc. Sec. R. 06-3p to her evaluation of N.P. Lee's and P.A. Brenneman's opinions. That ruling states that the ALJ should evaluate opinions from "other medical sources," such as physician assistants and nurse practitioners, using the same factors applicable to the evaluation of opinions from medical sources, 20 C.F.R. § 404.1527(d), and that the

---

[7] The ALJ did not perform the special technique for mental impairments required by 20 C.F.R. § 404.1520a. The court does not believe, however, that this fact requires remand of this case. On 5 March 2002, a consulting psychiatrist Giuliana Gage, M.D., reviewed the medical evidence and approved a psychiatric RFC form that included an assessment based on the special technique. Tr. 234. Dr. Gage concluded that plaintiff could perform simple routine repetitive tasks ("SRRTs") on a sustained basis. *Id.* 223. A consulting examining psychologist, Neil Barry, Ph.D., reached the same conclusion. *Id.* 211. The ALJ expressly references Dr. Barry's conclusion in her decision. *Id.* 17. The ALJ adopted the conclusion that plaintiff is limited to SRRTs as part of her RFC determination, which also found plaintiff limited to unskilled work. *Id.* 17, 19-20 no. 6. Neither plaintiff nor the government disputes the ALJ's determination regarding plaintiff's mental impairments. Under these circumstances, remand for application of the special technique would serve no useful purpose.

13

ALJ should explain the weight given such non-physician opinions. *See* Soc. Sec. R. 06-3p. However, that ruling did not become final until after the ALJ issued her decision and the Appeals Council denied review. *See* 71 Fed. Reg. 45593 (9 Aug. 2006). Some courts have declined to give the ruling retroactive effect. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007); *but see Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007) (retroactive effect given where application of ruling could have led to different outcome).

In any event, the ALJ did look to the consistency of N.P. Lee and P.A. Brenneman's opinions with other evidence and did adequately explain the weight given these opinions, as Ruling 06-3p counsels. The ALJ also cited to Soc. Sec. R. 96-2p. Like Soc. Sec. R. 06-3p, it directs that the ALJ consider the factors in 20 C.F.R. § 404.1527 in determining the weight of treating source opinions, albeit in the context of treating source medical opinions not entitled to controlling weight. The ALJ therefore appears to have followed the principles that were later formally embodied in Soc. Sec. R. 06-3p. Under the circumstances presented, remand for formal application of Soc. Sec. R. 06-3p is not warranted, and plaintiff's challenge based on that ground is without merit.

### 4. Treating Physician Opinions on Disability

Plaintiff also contends that a letter from Dr. Rao, dated 25 June 2006, submitted for the first time to the Appeals Council, tr. 417, precludes the RFC determination the ALJ made.[8] In his one-paragraph letter, Dr. Rao presents a brief summary of plaintiff's medical conditions. Part way through this summary, he states "[t]his is making her unable to work and hold out the gainful

---

[8] Plaintiff offers no explanation why this letter was not submitted or even mentioned at the hearing. It is dated four days before the hearing, held on 29 June 2005, and the record of the hearing was held open until 13 July 2005, albeit for certain dental records that were mentioned. Tr. 73.

14

employment at this point." *Id.* He later states "[b]ecause of her significant medical problems and she will be 62 in October she is unable to perform the gainful employment."[9] *Id.*

Opinions of treating physicians are accorded special weight in certain circumstances. Indeed, the Regulations provide that opinions of treating physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *see Craig*, 76 F.3d at 590; *see also Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. The Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 404.1527(d)(2)-(6).

The opinions of Dr. Rao, having been submitted to the Appeals Council for the first time, were not considered by the ALJ. The court must therefore evaluate if such late-submitted evidence would affect the determination of whether or not the ALJ's decision is supported by substantial evidence. *King v. Barnhart*, 415 F. Supp. 2d 607, 611 (E.D.N.C. 2005). "If, upon consideration of the entire record, including the new evidence [submitted to the Appeals Council], the district court cannot conclude that the ALJ's decision was supported by substantial evidence, remand should be ordered." *Id.* at 610-611.[10]

---

[9] The record contains what appears to be a related progress note by Dr. Rao, dated 27 June 2005, noting plaintiff's degenerative joint disease and age, and stating "[s]he is unable to work now. Tr. 418.

[10] *See also Cagle v. Barnhart*, No. 705CV504, 2006 WL 544005, at *3-4 (W.D. Va. 6 March 2006) (remand ordered where new evidence before Appeals Council served to create further conflict in the administrative record); *Myers v. Barnhart*, No. 705CR066, 2005 WL 3434978, at *4 (W.D. Va. 12 Dec. 2005) ("While the Appeals Council is not

15

The opinions by Dr. Rao do not require remand of this case. For the same reasons discussed with respect to N.P. Lee's and P.A. Brenneman's opinions, Dr. Rao's opinions are not supported by the objective medical findings and are not consistent with other substantial evidence in the record. The opinions are conclusory in nature and do not explain how or the extent to which plaintiff's impairments affect her ability to perform work-related activities. Moreover, Dr. Rao's opinions are on the ultimate issue of disability. In all these respects, Dr. Rao's opinions are very similar to the opinions of N.P. Lee and P.A. Brenneman, which the ALJ did consider and rejected.

Furthermore, while Dr. Rao may have supervised N.P. Lee in her treatment of plaintiff, the direct treatment relationship between Dr. Rao and plaintiff was a very limited one. *See* 20 C.F.R. § 404.1527(d)(2)(i); 21 N.C. Admin. Code § 36.0801(4) (requiring that nurse practitioners have an agreement with a physician for "ongoing supervision, consultation, collaboration and evaluation of the medical acts performed"). Dr. Rao has apparently seen plaintiff only three times since the alleged onset of her disability in February 2001.[11] Two visits were in 2002. Tr. 362, 363. The next and last visit was not until 27 June 2005, two days *after* the date of Dr. Rao's opinion letter. *Id.* 417, 418. Therefore, when Dr. Rao wrote his letter on 25 June 2005, he personally had not seen plaintiff for over two and a half years. For all these reasons, Dr. Rao's opinions are not entitled to significant weight, and they would not affect the determination that the ALJ's decision is supported by substantial evidence. *King*, 415 F. Supp. 2d at 611.

---

required by its regulatory scheme to provide a detailed statement of reasons regarding late-breaking evidence, its failure to deal with such evidence in any fashion meaningful to the district court's substantial evidence review runs the risk of a remand to require the Commissioner to explicitly consider the additional evidence under certain circumstances.") (internal citations omitted); *Riley v. Apfel*, 88 F. Supp. 2d 572, 578-80 (W.D. Va. 2000) (remand ordered where findings of record did not show weight attributed to new conflicting evidence submitted to the Appeals Council or how any factual conflicts created were resolved).

[11] In addition, Dr. Rao apparently saw her once in 1991 and once in 1992. Tr. 368, 369.

16

### 5. Other Considerations

There is one flaw in the ALJ's RFC determination, although it is harmless. The ALJ determined that plaintiff could climb stairs frequently, but in her hypothetical to the vocational expert posited the ability to claim stairs only occasionally. *Id.* 17, 19 no. 6, 67. The hypothetical to the vocational expert therefore erred by understating plaintiff's ability to climb stairs. Such understatement cannot be said to have prejudiced plaintiff, as an overstatement of her ability as determined by the ALJ might have.[12] Remand is therefore not necessary on this ground.

The court has reviewed the other evidence and findings underlying the ALJ's RFC determination and finds such determination otherwise to be lawful. Plaintiff's challenge to the RFC determination is accordingly without merit.

### D. Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ's refusal to fully credit plaintiff's testimony regarding her pain and other alleged limitations is not supported by substantial evidence. The court disagrees.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. As the ALJ himself recited in her decision, tr. 15-16, the ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594-95. Here, the ALJ did identify medically documented impairments that could produce symptoms of the type alleged by plaintiff. Tr. 17. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig*, 76 F.3d at

---

[12] The consulting physician Dr. Hoyt found plaintiff capable of climbing stairs occasionally based on her dizziness. Tr. 214. The ALJ found, however, that plaintiff had not had persistent problems with dizziness. *Id.* 16. The record therefore arguably supports a determination that plaintiff can climb stairs frequently.

17

595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (*quoting* Soc. Sec. R. 96-7p).

At the second step, the ALJ here concluded that "the claimant's allegations regarding her limitations are not totally credible." Tr. 19 no. 5. In reaching this conclusion, the ALJ explained at length and in detail the numerous inconsistencies she found between plaintiff's allegations and the medical and other evidence. *Id.* 16-17. The ALJ addressed plaintiff's allegations comprehensively, including those relating to gastrointestinal problems, edema, arthritis pain, carpal tunnel syndrome, dizziness and related nausea, depression and anxiety, and hearing loss. *Id.* These allegations include plaintiff's hearing testimony that her arthritis causes her such severe pain that she spends twelve to fourteen hours a day lying down. *Id.* 16. In each instance, the ALJ explains the reason why she does not find plaintiff's allegations fully credible, citing specific evidence of record. *Id.* 16-17. In the case of plaintiff's pain allegations, the ALJ cites the absence of support in the treatment records, among other contradicting evidence.[13] *Id.* 16.

Because the ALJ cited specific reasons for her credibility determination adequately based on facts in the record, her determination is supported by substantial evidence. Plaintiff's challenge to the ALJ's credibility determination should accordingly be denied.

---

[13] Such other evidence includes the fact that plaintiff was taking Celebrex for arthritis, as opposed to a stronger pain medication. Although progress notes submitted for the first time to the Appeals Council indicate that plaintiff's medication was subsequently changed to Mobic, tr. 419, that drug is of the same type as Celebrex, a non-steroidal anti-inflammatory drug ("NSAID"). *See Physicians' Desk Reference*, pp. 856, 860 (62nd ed. 2008).

18

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that defendant's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 7th day of December, 2007.

James E. Gates
United States Magistrate Judge